**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

LAMAR HAYWOOD,

    Petitioner,                          CASE NO. 2:06-CV-11820
v.                                         HONORABLE NANCY G. EDMUNDS
                                              UNITED STATES DISTRICT JUDGE

MARY BERGHUIS,

    Respondent,
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Lamar Haywood, ("Petitioner"), presently confined at the Brooks Correctional Facility in Muskegon Heights, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed by attorney S. Allen Early, petitioner challenges his conviction for first-degree murder, M.C.L.A. 750.316; and possession of a firearm in the commission of a felony, M.C.L.A. 750.227b. For the reasons stated below, the application for writ of habeas corpus is **DENIED.**

### I. Background

Petitioner was convicted of the above charges following a jury trial in the Wayne County Circuit Court. Petitioner's counsel has provided a detailed statement of facts in his petition for writ of habeas corpus.[1] The Court will

---

[1] *See* Brief in Support of Petition for Writ of Habeas Corpus, pp. 2-8 [This Court's Dkt Entry # 1].

1

therefore accept the factual allegations contained within the habeas petition insofar as they are consistent with the record, because the respondent has not disputed them. *See Dickens v. Jones,* 203 F. Supp. 2d 354, 360 (E.D. Mich. 2002). Because the facts of this case have been detailed by petitioner's counsel, they need not be repeated here in their entirety. Therefore, only a brief overview of the facts is required. *See e.g. Nevers v. Killinger,* 990 F. Supp. 844, 847 (E.D. Mich. 1997).

Petitioner was convicted of shooting and killing Derek Popular in Inkster, Michigan on June 8, 1997. Melanie Walker testified that she had known petitioner, by the nickname "Vicious", for three to four years, because she had purchased drugs from him. On the night in question, she witnessed petitioner shoot a gun at the victim from a truck, while the victim was standing on the porch of a house. On cross-examination, Walker admitted that she did not voluntarily go to the police and report the shooting, but only gave a statement to the police some twenty days later. Walker admitted that she told the police that she had been smoking crack cocaine and drinking on the day of the murder and could not remember the date of the shooting. Walker also admitted being high when she spoke with the police. Walker initially stated that she observed both of petitioner's hands on the gun, but later corrected herself and stated that she observed only his right hand on the gun. Walker admitted that she had been convicted of retail fraud on two separate occasions.

Several police officers testified that they responded to a shooting on June 28, 1997, in which petitioner and another individual had been shot. Sergeant James Vergona testified that he recovered an SKS semi-automatic rifle which was later determined to be the murder weapon from some bushes near where petitioner was lying on the ground after having been shot. However, another officer, Detective Thomas Diaz, testified, over objection, that someone at the crime scene had informed him that an African-American male had picked up the weapon that petitioner had in his possession and had taken off running behind a house. Diaz stated that he went behind the house and recovered the SKS rifle at this location. On cross-examination, Diaz admitted that he did not get the name of the individual who gave him this information, nor did he find out the identity of the man who had taken off running with the rifle in the first place. Defense counsel later recalled Diaz as a defense witness. Diaz acknowledged that he did not write down in his initial police report that he was directed to the rifle by any individuals, nor did he write down that the rifle had been removed off of petitioner by some unknown African-American male. Diaz further admitted that he never obtained a description of this male.

Detective Gregory Hill testified that the victim had been a witness in a murder case against petitioner's brother, Lonnell Haywood. Hill testified that Popular had been relocated outside of the Inkster area because he was a witness in this case.

Petitioner's case was affirmed on *appeal. People v. Haywood,* No. 222153 (Mich.Ct.App. July 24, 2001); *lv. den.* 466 Mich. 853, 643 N.W.2d 576 (2002). Petitioner filed a post-conviction motion for relief from judgment, which was denied. *People v. Haywood*, No. 98-013718 (Wayne County Circuit Court, February 17, 2004). The Michigan appellate courts denied petitioner leave to appeal. *People v. Haywood*, No. 260749 (Mich.Ct.App. August 16, 2005); *lv. den.* 474 Mich. 1026; 708 N.W.2d 420 (2006). Further facts will be discussed when addressing petitioner's individual claims. Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

> I. PETITIONER WAS DENIED HIS FIFTH AND FOURTEENTH AMENDMENT RIGHTS TO A FAIR TRIAL WHERE THE PROSECUTOR ENGAGED IN MISCONDUCT AND ADMITTED OTHER BAD ACT EVIDENCE, WHERE THE TRIAL COURT ALLOWED THE MISCONDUCT, AND WHERE THE TRIAL JUDGE ALLOWED THE PROSECUTOR TO DENIGRATE THE PRESUMPTION OF INNOCENCE IN FRONT OF THE JURY DESPITE AWARENESS THAT SUCH CONDUCT IS IMPROPER.
>
> II. PETITIONER'S FIFTH AND FOURTEENTH AMENDMENT DUE PROCESS RIGHTS TO A FAIR TRIAL WERE VIOLATED WHERE THE TRIAL COURT ALLOWED HEARSAY TESTIMONY THAT PETITIONER WAS IN POSSESSION OF THE MURDER WEAPON TWENTY DAYS AFTER THE MURDER DURING AN UNRELATED SHOOTING AND WHERE THE TRIAL COURT ALLOWED EXTENSIVE TESTIMONY CONCERNING THE UNRELATED SHOOTING INVOLVING THE MURDER WEAPON.
>
> III. PETITIONER'S FIFTH AND FOURTEENTH AMENDMENT DUE PROCESS RIGHTS WERE VIOLATED WHEN THE TRIAL COURT RESTRICTED CROSS EXAMINATION REGARDING BIAS AND CREDIBILITY OF THE ONLY ALLEGED WITNESS TO THE MURDER.

4

IV. PETITIONER WAS DENIED HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL.

V. PETITIONER WAS DENIED HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.

VI. PETITIONER WAS DENIED HIS FIFTH AND FOURTEENTH AMENDMENT DUE PROCESS RIGHT TO A FAIR TRIAL DUE TO THE CUMULATIVE ERRORS AT HIS TRIAL.

## II. Standard of Review

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362,

412-13 (2000). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

### III.  Discussion

**A.  Claims # 1 and # 2.  The other acts evidence claims.**

Petitioner first claims that the prosecutor violated the provisions of M.R.E. 404(b), by introducing "bad acts" evidence that he claims was irrelevant and inflammatory.  Petitioner specifically claims that the prosecutor introduced "bad acts" or "other acts" evidence that petitioner had sold illegal drugs, and that petitioner had been involved in an unrelated shooting, including evidence of a weapon and a bullet recovered from this shooting.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.*  Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000).

Petitioner's claim that the state court violated M.R.E. 404(b) by admitting this evidence is non-cognizable on habeas review. *See Bey v. Bagley,* 500 F 3d

6

514, 519 (6th Cir. 2007). The admission of this "prior bad acts" or "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003); *Adams v. Smith,* 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). Likewise, petitioner's claim that this evidence was irrelevant does not raise due process issues of constitutional magnitude or entitle him to habeas corpus relief. *See Oliphant v. Koehler*, 451 F. Supp. 1305, 1308 (W.D. Mich. 1978). Finally, appraisals of the probative and prejudicial value of evidence are entrusted to the sound discretion of a state trial court judge, and a federal court considering a habeas petition must not disturb that appraisal absent an error of constitutional dimensions. *See Dell v. Straub*, 194 F. Supp. 2d 629, 645 (E.D. Mich. 2002).

As a related claim, petitioner contends that the trial court erred in admitting hearsay testimony which connected petitioner to the murder weapon, because there was an insufficient foundation for admitting this evidence pursuant to an excited utterance exception to the hearsay rule. However, the trial court, over defense objection, concluded that such evidence was admissible pursuant to this excited utterance exception found in M.R.E. 803(2).

What is or is not hearsay evidence in a state court trial is governed by

7

state law. *See Johnson v. Renico,* 314 F. Supp. 2d 700, 705 (E.D. Mich. 2004)(internal citations omitted). Petitioner's claim that the trial court improperly admitted the witness' statement to Detective Diaz concerning the location of the murder weapon under the excited utterance exception to the hearsay rule presents a state evidentiary law issue which is not cognizable on federal habeas review. *See Weber v. Newland,* 16 Fed. Appx. 692, 693 (9th Cir. 2001); *See also Williams v. White,* 183 F. Supp. 2d 969, 975-77 (E.D. Mich. 2002). Petitioner is not entitled to habeas relief on these claims.

**B. Claim # 1. Prosecutorial misconduct.**

As part of petitioner's first claim, petitioner further contends that the prosecutor denigrated the concept of the presumption of innocence, when he made the following comments during *voir dire:*

> MR. WAGNER: "The Judge has also given us some principles of law. He's indicated that a person who comes before you is presumed to be innocent. Everybody heard the Judge say that, correct?
>
> PROSPECTIVE JURORS: Yes.
>
> MR. WAGNER: So if by chance I should look in my pocket and I'm looking for my pen and I don't see it and I happen to see one over on the court reporter's desk that looks like mind (sic) and in my mind, you know, it might be a little misplaced, in my mind I know he took my pen. I walked out of the room and he took it. And I just kind of lost it and I grabbed the chair here and I just pounced on him. And I started bearing him with the chair. What do you suppose is going to happen? Well, the young man over here in this brown uniform will probably grab me and restrain me. And he's restraining me and pulling me from the court room, I'm screaming. I hit him with that chair and I'm going to kill him. And I did that before all of you and before the Judge and another

attorney. But one day I would be sitting in a court room just like this man, would I not be or possibly? And the Judge would be giving an instruction to potential jurors such as yourselves and the Judge would probably say– or no. The Judge would say what? That I'm presumed to be what?

PROSPECTIVE JURORS: Innocent.

MR. WAGNER: Presumed to be innocent. So, it doesn't necessarily mean that I haven't done anything, it just means that you cannot consider that until you've heard all of the evidence. Do you understand what I am saying?

PROSPECTIVE JURORS: Yes.

MR. WAGNER: You have to presume that this person is innocent. You can't consider anything until the Judge tells you to retire to the deliberation room and consider all of the evidence. Understand that?

PROSPECTIVE JURORS: Yes.

(Tr. 7/19/1999, pp. 60-62).

When a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor. On habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1355-56 (6th Cir. 1993). In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they

9

were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Id.*

The prosecutor's comments in this case were not improper. When viewed in context, the prosecutor's comments were an accurate reflection of the idea that the presumption of innocence surrounding a defendant in a criminal prosecution continues to operate until overcome by proof of guilt beyond a reasonable doubt. *See United States v. Fleischman,* 339 U.S. 349, 363 (1950). Petitioner is not entitled to habeas relief because in the context of his comments, the prosecutor did not undermine the concept of the presumption of innocence, particularly in light of the fact that the prosecutor several times emphasized that petitioner was presumed innocent. *See Bowling v. Parker,* 344 F. 3d 487, 513 (6th Cir. 2003)(prosecutor's comment during general voir dire in capital murder case, that jury should be neutral, did not undermine presumption of innocence, and thus did not warrant federal habeas relief, where comment had been immediately preceded by remark that defendant was innocent until proven guilty). Finally, the prosecutor's comments concerning the presumption of innocence did not render petitioner's trial fundamentally unfair in light of the fact that the trial court gave the jury the correct instruction on the presumption of innocence. *See Kellogg v. Skon,* 176 F. 3d 447, 451 (8th Cir. 1999). Petitioner is not entitled to habeas relief on his prosecutorial misconduct claim.

### C. Claim # 3. The Confrontation Clause claim.

Petitioner next claims that his right to confrontation was violated when the trial court refused to allow defense counsel to question Melanie Walker about the fact that she was permitted to withdraw a plea of guilty to a criminal charge which was ultimately dismissed just before petitioner's trial and that she had avoided being arrested for creating a disturbance at Danny's Market in Inkster, Michigan by implicating petitioner in the murder. [2]

The Sixth Amendment Confrontation Clause guarantees the accused the right to cross examine adverse witnesses to uncover possible biases and expose the witness' motivation in testifying. *See Davis v. Alaska*, 415 U.S. 308, 315-316 (1974). However, the Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, that the defendant might wish. *United States v. Owens*, 484 U.S. 554, 559 (1988)(internal citations omitted). The Confrontation Clause of the Sixth Amendment does not prevent a trial judge from imposing limits on a defense counsel's inquiry into potential bias of a

---

[2] Respondent contends that this claim, as well as petitioner's fourth claim, are procedurally defaulted, because he raised them for the first time in his post-conviction motion for relief from judgment and failed to show cause for failing to raise these issues in his appeal of right, as well as prejudice, as required by M.C.R. 6.508(D)(3). In this case, petitioner claims that his appellate counsel was ineffective for failing to raise his claims in his appeal of right. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claims, it would be easier to consider the merits of these claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

11

prosecution witness; to the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, a witness' safety, or interrogation that is repetitive or only marginally relevant. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

Petitioner has failed to show that his Sixth Amendment right to confrontation was violated by the trial court's refusal to permit petitioner to question Walker about the dismissed criminal charge or about whether Walker had volunteered information about petitioner to avoid arrest for creating a disturbance. First, petitioner presented no evidence, either to the state courts or to this Court, that Walker had been given any deal by the prosecution in exchange for her testimony or that the Inkster Police had decided not to arrest Walker only after she implicated petitioner for the crime. Because there was no showing that Walker was allowed to withdraw her guilty plea to this offense as part of a plea bargain or that she avoided arrest by implicating petitioner, the exclusion of such marginally relevant evidence did not violate petitioner's Confrontation Clause rights. *See Washington v. Renico,* 455 F. 3d 722, 728-29 (6th Cir. 2006)(exclusion of impeaching evidence regarding dismissal of unrelated charges against prosecution witness did not violate defendant's confrontation rights, in prosecution for first-degree murder; the dismissal

concerned charges against witness in another jurisdiction, it occurred weeks before trial, and there was no showing that the dismissal was related in any way to the witness's testimony).

Secondly, petitioner was able to sufficiently challenge Walker's credibility and bias by eliciting information from Walker that she did not voluntarily go to the police and report the shooting, but did so only twenty days later. Walker admitted that she had been intoxicated from smoking crack cocaine and drinking on the day of the shooting and further admitted to being intoxicated when she spoke to the police. Walker gave conflicting testimony about how many hands petitioner used to hold the gun when he shot the victim. Finally, Walker admitted that she had two prior convictions for retail fraud. In light of other impeachment evidence presented against Walker, the admission of the evidence that Walker had been permitted to withdraw her guilty plea and that she may have avoided arrest by volunteering information against petitioner would have been cumulative and marginally relevant, such that its exclusion did not violate petitioner's Sixth Amendment right to confrontation. *Washington,* 455 F. 3d at 729-30. Petitioner is not entitled to habeas relief on his third claim.

**D. Claims # 4 and # 5. The ineffective assistance of counsel claims.**

The Court will consider petitioner's fourth and fifth claims together for judicial clarity. In his fourth claim, petitioner contends that he was deprived of the effective assistance of trial counsel. In his fifth claim, petitioner alleges that

13

he was deprived the effective assistance of appellate counsel.

To prevail on his ineffective assistance of counsel claim, petitioner must show that the state court's conclusion regarding his claim was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687. The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F. 3d 602, 617 (6th Cir. 2005).

In his fourth claim, petitioner contends that counsel was ineffective for failing to investigate the hearsay information contained in the testimony of Detective Diaz regarding the unknown person who picked up the murder weapon from petitioner and the unknown person who observed this. Petitioner, however, does not proffer any evidence that this evidence would have been exculpatory.

A habeas petitioner's conclusory allegation that his attorney failed to adequately present a defense, without specifying what more his attorney could have done to strengthen his defense, is insufficient to establish ineffective assistance of counsel. *See Campbell v. Grayson,* 207 F. Supp. 2d 589, 598 (E.D. Mich. 2002). In the present case, even if counsel was deficient for failing

14

to investigate the hearsay declarant to discover what he knew about the murder weapon that was taken from petitioner, petitioner has failed to show that he was prejudiced by counsel's failure to investigate this witness, because he has failed to present any evidence that the hearsay declarant, or the other person who removed the weapon from petitioner, would have aided petitioner's defense. Petitioner has not established that the result of the proceeding would have been different if counsel had further investigated the hearsay declarant or the other individual nor has he shown that trial counsel's conduct has undermined the reliability of the trial proceedings, so as to establish that he was deprived of the effective assistance of trial counsel. *See Reedus v. Stegall,* 197 F. Supp. 2d 767, 781-82 (E.D. Mich. 2001).

Moreover, in light of the fact that Detective Diaz acknowledged that he never obtained the name of the hearsay declarant or ascertained the identity of the man who took off running with the rifle, it is doubtful that these witnesses could have been located or would have provided favorable testimony for petitioner, had they been found and called to testify. Petitioner is therefore unable to establish that counsel was ineffective for failing to investigate these witnesses. *See Wolfe v. Bock,* 412 F. Supp. 2d 657, 678-79 (E.D. Mich. 2006)(defense counsel's performance did not fall below an objective standard of reasonableness in regard to presenting evidence that third parties may have been involved in the homicide for which the habeas petitioner was convicted,

absent showing that the uncalled witnesses could in fact have been located or that they would have testified if called).  Petitioner is not entitled to habeas relief on his fourth claim, because the Michigan courts' rejection of his ineffective assistance of counsel claim constituted a reasonable application of *Strickland.* *See Pearl v. Cason,* 219 F. Supp. 2d 820, 829 (E.D. Mich. 2002).

Finally, to the extent that Petitioner contends that appellate counsel was ineffective for failing to raise some of the claims that he has raised in his petition on his direct appeal, his ineffective assistance of appellate counsel claim must fail, because these claims are without merit.  *See Siebert. v. Jackson,* 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).  Petitioner is not entitled to habeas relief on his fifth claim.

**E.  Claim # 6.  The cumulative errors claim.**

In his final claim, petitioner alleges that he was deprived of a fair trial because of cumulative error.  The Sixth Circuit has noted that the United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle,* 291 F. 3d 416, 447 (6th Cir. 2002). Therefore, petitioner is not entitled to habeas relief on his cumulative errors claim.  *Id.; See also Salters v. Palmer,* 271 F. Supp. 2d 980, 992 (E.D. Mich. 2003).

**IV. Conclusion**

The Court will deny the petition for writ of habeas corpus.  The Court will

also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States,* 310 F. 3d 900, 901 (6th Cir. 2002). A district court therefore has the power to deny a certificate of appealability *sua sponte. See Dell v. Straub,* 194 F. Supp. 2d 629, 658 (E.D. Mich. 2002). For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *Id.* at 659.

### V. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

17

                    s/Nancy G. Edmunds
                    Nancy G. Edmunds
                    United States District Judge

Dated: January 10, 2008

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 10, 2008, by electronic and/or ordinary mail.

                    s/Carol A. Hemeyer
                    Case Manager